**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12208

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

RICARDO VILLANUEVA-MARTINEZ,
a.k.a. Nicolas Enrique-Ruiz,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:24-cr-00063-JPB-JEM-1

_____

Before NEWSOM, GRANT, and ABUDU, Circuit Judges.

PER CURIAM:

Ricardo Villanueva-Martinez appeals his sentence of 35 months and 2 days' imprisonment for illegal reentry following removal, in violation of 8 U.S.C. § 1326(a) & (b)(2). On appeal,

Villanueva-Martinez argues that the district court erred in denying him a downward departure and that his sentence is substantively unreasonable. After careful review, we conclude that we lack jurisdiction over Villanueva-Martinez's first argument, and that the district court did not abuse its discretion and impose a substantively unreasonable sentence. Accordingly, we affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In February 2024, Villanueva-Martinez was charged, in a one-count indictment, with illegally entering the United States, without the consent of the Attorney General or the Secretary of Homeland Security, after previously having been deported, in violation of 8 U.S.C. § 1326(a) & (b)(2). He later pled guilty without a plea agreement.

A probation officer prepared a presentence investigation report ("PSI") in advance of sentencing, which described Villanueva-Martinez's offense in greater detail. Villanueva-Martinez, a citizen of Mexico, first entered the United States as a child. In 2007, as a teenager, he was convicted of robbery under Georgia law and was sentenced to 20 years' custody, including seven years in prison. In April 2012, after being released from prison, Villanueva-Martinez was removed from the country. In October 2018, Villanueva-Martinez was convicted of illegal reentry as an aggravated felon and was sentenced to 19 months' imprisonment. After he served that sentence, he was removed from the country a second time in January 2020. At some point later, Villanueva-Martinez again returned to the United States and settled in Georgia. In January 2024,

immigration officers arrested Villanueva-Martinez during a visit to his residence. The officers determined that he was a citizen of Mexico who had twice been deported—in April 2012 and January 2020—and that he did not have legal status to remain in the United States.

The PSI calculated a base offense level of eight, under U.S.S.G. § 2L1.2(a).[1] It then added four levels to Villanueva-Martinez's offense level, under U.S.S.G. § 2L1.2(b)(1)(A), because Villanueva-Martinez had a prior felony illegal reentry conviction. It also added ten levels, under U.S.S.G. § 2L1.2(b)(2)(A), because Villanueva-Martinez had been convicted of a felony—robbery under Georgia law—and was sentenced to more than five years in prison for that crime before being removed from the United States for the first time. The PSI then reduced Villanueva-Martinez's offense level by three for acceptance of responsibility, under U.S.S.G. § 3E1.1(a) & (b), yielding a total offense level of 19.

The probation officer next calculated Villanueva-Martinez's criminal history score to be six, based on Villanueva-Martinez's prior convictions for robbery and illegal reentry, summarized above. With six criminal history points, the PSI assigned him a criminal history category of III. *See* U.S.S.G. Ch. 5 Pt. A. Based on

---

[1] The PSI used the 2023 Sentencing Guidelines Manual for its calculations. Therefore, throughout this opinion we cite to, and apply, that version, unless otherwise noted. *See United States v. Maurya*, 25 F.4th 829, 836 (11th Cir. 2022) (noting "courts typically apply the Guidelines in effect at the time of sentencing," except that "the Ex Post Facto Clause prohibits the use of Guidelines issued after the offense that create a higher applicable sentencing range").

a total offense level of 19 and a criminal history category of III, the PSI calculated Villanueva-Martinez's advisory guideline range to be 37 to 46 months' incarceration. *See id.* It further noted that the statutory maximum sentence for Villanueva-Martinez's offense was 20 years' imprisonment.

The PSI also provided additional personal information about Villanueva-Martinez. When Villanueva-Martinez arrived in the United States as a minor seeking economic opportunity, he had no family or friends in the country, so he lived in a "flophouse" with adult-aged men with whom he worked in the construction industry. At the time of his arrest in this case, Villanueva-Martinez had been living with his partner and their three children in Georgia. The PSI noted that, upon his release from custody, Villanueva-Martinez and his family planned to relocate to Mexico so that he could be a part of his infant son's life without returning to the United States.

In his filings before sentencing, Villanueva-Martinez made two arguments. First, he argued that his circumstances—specifically his young age at the time of his robbery conviction—warranted a downward departure under U.S.S.G. § 2L1.2, comment. (n.6), and U.S.S.G. § 5H1.1 (2024).[2] Second, he asked the court to

---

[2] Villanueva-Martinez acknowledged that U.S.S.G. § 5H1.1 (2024) had not yet taken effect and, therefore, the court was "under no obligation to consider" it. However, he argued that it supported his arguments because it showed the Sentencing Commission was addressing concerns similar to the ones he was raising under the 2023 version of the Sentencing Guidelines.

24-12208                Opinion of the Court                5

vary downward and impose a sentence under the advisory guide-line range, in light of the sentencing factors in 18 U.S.C. § 3553(a).

As to his departure argument, Villanueva-Martinez argued that the ten level enhancement under U.S.S.G. § 2L1.2(b)(2)(A) was disproportionately punitive because he had been convicted of Georgia robbery when he was only 15 years old.  He explained that, while he participated in the robbery, he was a young child, working as a child laborer, and that his codefendants were much older and, therefore, more culpable.  He contended that a downward departure under both U.S.S.G. § 2L1.2, comment. (n.6), and "the upcoming" U.S.S.G. § 5H1.1 (2024), instead was warranted.

As for his § 3553(a) variance argument, Villanueva-Martinez asserted that his personal characteristics were mitigating.  He explained that he had an impoverished childhood, worked as a child laborer, and was convicted of robbery as a teenager.  He later was the victim of an armed robbery and was shot in the face.  While he conceded that he reentered the United States after his prior deportations, he explained that he did so to reunite with his wife and children and provide for his family through his work in the United States.  Finally, he noted that his family intended to relocate to Mexico, removing any impetus for him to return and violate the law again.  Villanueva-Martinez submitted a letter from his wife testifying to his character and requesting that he receive a short sentence and "be deported immediately so that" their family could be reunited in Mexico.

The government urged the court to impose a 37-month sentence of imprisonment without supervised release to follow. It argued Villanueva-Martinez's conduct showed repeated disregard of federal immigration laws and asserted that a sentence at the low-end of the advisory guidelines would be appropriate to "promote respect for the law and to deter" Villanueva-Martinez from violating the immigration laws again. The government also argued a downward departure was unwarranted because Villanueva-Martinez's robbery conviction was serious and the U.S.S.G. § 2L1.2(b) enhancement promoted deterrence "among the category of defendants"—felons—"that Congress has sought to deter from illegally reentering the United States." It further contended the 2024 Amendment to U.S.S.G. § 5H1.1 was not retroactive and the record did not support Villanueva-Martinez's request for a downward variance.

At sentencing, in June 2024, the parties confirmed that there were no other objections to the PSI besides those already summarized. Accordingly, the district court adopted the PSI and its Guidelines calculations. The district court also explained that it had read both parties' presentencing submissions, "as well as the letters offered on behalf of" Villanueva-Martinez. The parties then presented argument on the departure issue.

Villanueva-Martinez acknowledged that the district court was "not required" to follow the 2024 Sentencing Guidelines Amendments, which had not yet taken effect. That said, he argued that the upcoming Amendments supported his argument that his

24-12208                Opinion of the Court                    7

age at the time of his robbery—15 years old—was a highly mitigating fact, given the way that a lack of impulse control and full brain development, along with peer pressure and a lack of supervision, negatively and disproportionately impact the decisions of the young. Villanueva-Martinez also explained that, if the robbery conviction were not factored into the guideline calculations, his advisory sentencing range would be much shorter: 8 to 14 months' imprisonment. He also reiterated that the robbery was the only serious crime he had committed; he had rehabilitated himself and not engaged in violent conduct in the years since. Villanueva-Martinez further argued that, even if the district court did not consider the Guidelines Amendment, the court could depart downward under U.S.S.G. § 2L1.2, comment. (n.6), based on similar considerations.

The government explained that, though the Guidelines Amendment upon which Villanueva-Martinez relied would likely soon go into effect, it had not yet gone into effect and would likely not be retroactive in any event. On the merits, the government argued that a departure was unwarranted and the 10-level enhancement was appropriate. It explained that the robbery was a "serious crime," and that the enhancement was tailored to the deterrence of "illegal entry by aggravated felons" which is the crime to which Villanueva-Martinez had pled guilty.

The district court denied Villanueva-Martinez's request for a departure. First, it explained that it would not apply the proposed Amendment because it was not yet in effect. Second, it found that,

in any event, neither U.S.S.G. § 5H1.1 (2024) nor § 2L1.2, comment. (n.6) were appropriate in light of the severity of the underlying robbery offense. However, it explained that it would consider the arguments about Villanueva-Martinez's personal circumstances as they related to the § 3553(a) factors.

Turning to the § 3553(a) factors, Villanueva-Martinez argued that he had returned to the United States to provide for his wife and children. Upon his return, he worked to support his family, largely complying with the law. Furthermore, he would not return to the United States because his family was planning to relocate to Mexico. He reiterated that he had a difficult upbringing, had made mistakes as a child, had been the victim of a violent crime and was, at bottom, trying to provide for his family. For these reasons, he requested the court have mercy and impose a downward variance from the advisory guideline range. Villanueva-Martinez then allocuted, apologizing for his conduct. The government reiterated its request for a 37-month sentence, highlighting several applicable § 3553(a) factors.[3]

After hearing these arguments, the district court imposed a 35-month and 2-day sentence, to be followed by two years of supervised release. The court explained that its sentence was "made in view of the sentencing goals" in § 3553(a) "and the parties'

---

[3] Villanueva-Martinez also requested that the district court depart from the guidelines by 58 days so that he could receive credit towards his sentence for the time he spent in immigration custody. The district court granted that unopposed request.

arguments as to those factors," and then it listed those factors on the record. It explained that Villanueva-Martinez's "repeated immigration offenses" informed its decision. However, it also noted Villanueva-Martinez's "sympathetic history," including that he grew up "very poor" and provided for his family. Still, it found that the offense conduct represented repeated and "flagrant[]" violations of the immigration laws despite having committed a felony. Accordingly, it imposed a within-guideline sentence, which it believed would serve general and specific deterrence goals. It also explained that it considered a sentence longer than the government's 37-month request, but concluded that it would not have been appropriate. Finally, it recognized the sway of Villanueva-Martinez's arguments for a departure and explained that it considered them "as part of the [§] 3553(a) factors," rather than as a formal departure.

Villanueva-Martinez objected on the two grounds that he raises now on appeal and the district court overruled those renewed objections. The district court subsequently entered a written judgment to the effect of its oral rulings. Villanueva-Martinez appealed.

## II. STANDARD OF REVIEW

We follow a "two-step process" when reviewing a sentence. *United States v. Trailer*, 827 F.3d 933, 935 (11th Cir. 2016). First, we review the sentence for procedural reasonableness. *Id.* at 936. In doing so, we determine "whether the district court committed any significant procedural error, such as miscalculating the advisory

guideline range . . . , failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* We review jurisdictional issues *de novo*. *See United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008); *United States v. Winingear*, 422 F.3d 1241, 1245 (11th Cir. 2005).

Second, we determine "whether the sentence is substantively reasonable in light of the totality of the circumstances and the § 3553(a) factors." *Trailer*, 827 F.3d at 936. "We review the substantive reasonableness of a sentence for an abuse of discretion." *United States v. Butler*, 39 F.4th 1349, 1354–55 (11th Cir. 2022). In reviewing for substantive reasonableness, "we will not substitute our own judgment for that of the sentencing court and we will affirm a sentence so long as the court's decision was 'in the ballpark of permissible outcomes.'" *Id.* at 1355 (quoting *United States v. Rosales-Bruno*, 789 F.3d 1249, 1257 (11th Cir. 2015) (Opinion of E. Carnes, C.J.)). A party arguing a sentence is unreasonable bears "the burden of establishing the sentence is unreasonable in light of the record and the § 3553(a) factors." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008); *see also United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). "[W]e have identified three ways in which a district court can abuse its discretion" and "impos[e] a substantively unreasonable sentence: (1) failing to properly consider a relevant sentencing factor that was due significant weight, (2) giving significant weight to a factor that was not relevant, or (3) committing a clear error of judgment by weighing the sentencing factors unreasonably." *Butler*, 39 F.4th at 1356; *see also*

*United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*) (same).

## III. DISCUSSION

As noted above, Villanueva-Martinez makes two challenges, which track onto our "two-step process" for reviewing sentences. *See Trailer*, 827 F.3d at 935–36. We take each issue in turn.

### A. *Procedural Reasonableness*

Villanueva-Martinez first argues that the district court procedurally erred in declining to grant him a downward departure. He contends that U.S.S.G. § 2L1.2, comment. (n.6), and U.S.S.G. § 5H1.1 (2024) each identified factors that applied to his case, and that the district court erred by failing to grant his request for a departure without an adequate explanation for its decision. The government argues that we lack jurisdiction to review the district court's decision not to depart downward. Even if we could review the decision, it continues, the district court did not err in exercising its discretion by denying Villanueva-Martinez's request. We agree with the government's first argument: we lack jurisdiction over the district court's discretionary departure decision.

Our review of "departure decisions is governed by different rules depending on whether the district court has chosen to depart or not to depart." *United States v. Pressley*, 345 F.3d 1205, 1209 (11th Cir. 2003). "We may not review at all the district court's discretionary decision not to depart from the guidelines' sentencing range, but we review de novo the question of whether the district court erroneously believed it lacked authority to depart." *Id.*

(citing *United States v. Mignott*, 184 F.3d 1288, 1290 (11th Cir. 1999)). Accordingly, we can review "whether the district court in fact believed it lacked authority to depart," and "whether, if the district court held such a belief, it was based on legal error." *Id.* (first citing *United States v. Alfaro-Zayas*, 196 F.3d 1338, 1342, 1344 (11th Cir. 1999); and then citing *United States v. Webb*, 139 F.3d 1390, 1395 (11th Cir. 1998)).

Yet, when a district court knows it has authority to depart and makes a discretionary decision not to do so, we lack jurisdiction to review its decision. *See Winingear*, 422 F.3d at 1245; *United States v. Ortega*, 358 F.3d 1278, 1280 (11th Cir. 2003); *United States v. Fossett*, 881 F.2d 976, 979 (11th Cir. 1989).[4]  While "it would facilitate review if sentencing judges would state on the record that they believe they have or do not have the authority to depart," such a statement is not required. *Dudley*, 463 F.3d at 1228; *see also United States v. Chase*, 174 F.3d 1193, 1195 (11th Cir. 1999).  When nothing in the record shows otherwise, we assume that the district court understood it had the authority to depart. *Dudley*, 463 F.3d at 1228.

---

[4] Our opinions have been somewhat inconsistent in their terminology on this issue. *Compare United States v. Dudley*, 463 F.3d 1221, 1228 (11th Cir. 2006) (concluding we "d[id] not have jurisdiction," but affirming); *with Ortega*, 358 F.3d at 1280 (concluding the district court's "refusal to depart is unreviewable on appeal" and then dismissing the appeal).  Here, we affirm, rather than dismiss, Villanueva-Martinez's challenge, because our first case addressing this issue affirmed the sentence, it did not dismiss the appeal. *See Fossett*, 881 F.2d at 979–80.  *Cf. Beazer v. Richmond Cnty. Constructors, LLC*, 169 F.4th 1082, 1086 n.3 (11th Cir. 2026) ("To the extent that any conflict exists in our circuit precedent, we defer to the line of authority containing the oldest opinion.").

24-12208                Opinion of the Court                13

If a "district court's statements reflect an ambiguity concerning its ability to depart," we resolve the ambiguity in the defendant's favor. *Ortega*, 358 F.3d at 1279 & n.3.

Here, by all indications, the district court understood it had the authority to depart downward, as it heard the argument from Villanueva-Martinez's attorney on each challenged Guidelines provision and explained why it did not believe a departure would be appropriate. Under these circumstances, we must assume the district court understood its authority to depart, and our precedent does not require the district court to make an explicit statement to this effect. *See Chase*, 174 F.3d at 1195; *Dudley*, 463 F.3d at 1228. Indeed, Villanueva-Martinez does not make any argument that the district court misapprehended its authority to depart. Accordingly, while we can review certain legal challenges to departure decisions, *Pressley*, 345 F.3d at 1209; *Mignott*, 184 F.3d at 1290; *Alfaro-Zayas*, 196 F.3d at 1342, 1344; *Webb*, 139 F.3d at 1395, Villanueva-Martinez simply makes no such challenge in this appeal.[5]

Consequently, we lack jurisdiction over the court's discretionary decision not to grant Villanueva-Martinez's request for a departure. *Winingear*, 422 F.3d at 1245; *Ortega*, 358 F.3d at 1280; *Fossett*, 881 F.2d at 979–80. Accordingly, we affirm on this issue.

---

[5] Villanueva-Martinez also does not argue that the district court erred as a matter of law in declining to apply the 2024 Guidelines Amendment that he raised at trial. As noted above, that challenge would be meritless in any event, since generally sentencing courts apply the Sentencing Guidelines in effect at the time of sentencing. *See Maurya*, 25 F.4th at 836.

### B. *Substantive Reasonableness*

Second, Villanueva-Martinez argues that the district court abused its discretion by focusing entirely on one relevant factor—his criminal history—and failing to consider his rehabilitation and his family circumstances. As to the first aspect of this argument, Villanueva-Martinez argues that his criminal history is not serious and his only violent crime occurred when he was a teenager. As to the second aspect of his challenge, he argues that the district court ignored the reasons for his offense, namely his personal circumstances and family obligations, which led him to reenter the United States to provide for his family.

Under § 3553(a), a sentencing court must impose a sentence that is "sufficient, but not greater than necessary . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense, . . . to afford adequate deterrence," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The court also must consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(1), (6).

While advisory, the Sentencing Guidelines are the starting point that a sentencing court must consider. *Gall v. United States*, 552 U.S. 38, 49 (2007). Given their important role in the federal sentencing process, "we ordinarily expect sentences within the

24-12208                Opinion of the Court                15

advisory guidelines range to be reasonable." *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009); *see also United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008); *United States v. Castaneda*, 997 F.3d 1318, 1332 (11th Cir. 2021). For similar reasons, a sentence imposed "well below" the statutory maximum also can indicate reasonableness. *Gonzalez*, 550 F.3d at 1324; *see also United States v. Dougherty,* 754 F.3d 1353, 1362 (11th Cir. 2014).

Though the district court must consider all relevant § 3553(a) factors, "the weight given to each factor is committed to the sound discretion of the district court," and it may attach great weight to one factor over the others. *Butler*, 39 F.4th at 1355. A court's "failure to discuss . . . 'mitigating' evidence" does not indicate that the court "erroneously 'ignored' or failed to consider th[e] evidence in determining [the defendant's] sentence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007); *see also United States v. Al Jaberi*, 97 F.4th 1310, 1330 (11th Cir. 2024). Instead, a "court's acknowledgment that it has considered the § 3553(a) factors and the parties' arguments" is typically sufficient to show it has considered the issues and arguments before it. *Butler*, 39 F.4th at 1356 (citing *Sarras*, 575 F.3d at 1219).

Here, Villanueva-Martinez has not shown an abuse of discretion. While he argues that the district court focused too heavily on his criminal conviction and failed to give his mitigation arguments sufficient weight, a district court may permissibly attach great weight to one relevant factor over the others. *See Butler*,

39 F.4th at 1355; *see also United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009) (same).

In addition, a district court does not abuse its discretion by not discussing, at length, a defendant's mitigation evidence at sentencing, so long as the record shows that it considered the § 3553(a) factors and the parties' arguments. *Amedeo*, 487 F.3d at 833; *Al Jaberi*, 97 F.4th at 1330. Nonetheless, the district court here did consider Villanueva-Martinez's mitigation arguments, as they were discussed at length during the sentencing hearing. Indeed, even after the court denied Villanueva-Martinez's request for a departure, it stated that it considered those arguments as part of its analysis of the § 3553(a) factors. In addition, the court ultimately settled on a sentence at the low end of the advisory guideline range and far shorter than the 20-year statutory maximum. *Gonzalez*, 550 F.3d at 1324; *Dougherty,* 754 F.3d at 1362. *See also* 8 U.S.C. § 1326(b)(2). These are all indications that the district court's chosen sentence was reasonable.

In sum, Villanueva-Martinez has not shown that the district court "fail[ed] to properly consider a relevant sentencing factor that was due significant weight"; gave "significant weight to a factor that was not relevant"; or "commit[ted] a clear error of judgment by weighing the sentencing factors unreasonably." *Butler*, 39 F.4th at 1356; *see also Irey*, 612 F.3d at 1189. Instead, the district court's decision to impose a within-guideline 35 months and 2 days' sentence was a choice within "the ballpark of permissible outcomes," in light of the whole record and the § 3553(a) factors. *Butler*,

39 F.4th at 1355 (quoting *Rosales-Bruno*, 789 F.3d at 1257).  Accordingly, we affirm on this issue as well.

## IV. CONCLUSION

For the reasons we have explained, we lack jurisdiction over Villanueva-Martinez's first challenge to his sentence, and he has not shown his sentence is substantively unreasonable.  Accordingly, we affirm his sentence.

**AFFIRMED.**

24-12208                ABUDU, J., Concurring                1

ABUDU, Circuit Judge, Concurring:

I concur in the majority opinion, as it faithfully applies our binding precedent. *See United States v. Lebarron*, 178 F.4th 646, 661 (11th Cir. 2026) (Abudu, J., concurring) ("[O]nly this Court sitting *en banc* or the Supreme Court may overrule our binding precedent . . . and change 'the law of this Circuit.'" (citation omitted)). I write separately to question our precedent's conclusion that we lack jurisdiction over discretionary district court departure decisions.

## I.

"Jurisdictional requirements mark the bounds of a 'court's adjudicatory authority.'" *Boechler, P.C. v. Comm'r*, 596 U.S. 199, 203 (2022) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). Accordingly, such jurisdictional requirements are very strict: they "cannot be waived or forfeited, must be raised by courts *sua sponte*, and . . . do not allow for equitable exceptions." *Id.* (first citing *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434–35 (2011); and then citing *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013)). The Supreme Court has instructed us that a limitation should be deemed "jurisdictional only if Congress 'clearly states' that it is." *Bowe v. United States*, 607 U.S. 13, 27 (2026) (quoting *Boechler*, 596 U.S. at 203); *see Wilkins v. United States*, 598 U.S. 152, 157 (2023) (similar). Labeling non-jurisdictional limitations as jurisdictional closes the courthouse door to individuals with potentially meritorious claims when Congress has left that door open. *See Wilkins*, 598 U.S. at 157 ("Loosely treating procedural

2                          ABUDU, J., Concurring                    24-12208

requirements as jurisdictional risks undermining the very reason Congress enacted them."); *Mata v. Lynch*, 576 U.S. 143, 150 (2015) ("[W]hen a federal court has jurisdiction, it also has a 'virtually unflagging obligation . . . to exercise' that authority." (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976))).

## II.

As the majority opinion explains, this Court's precedent holds that we lack jurisdiction over a sentencing court's discretionary decisions regarding downward departures, provided the district court understood its authority to grant such a request. *See, e.g.*, *United States v. Winingear*, 422 F.3d 1241, 1245 (11th Cir. 2005)[1]; *United States v. Ortega*, 358 F.3d 1278, 1279 (11th Cir. 2003) ("Ordinarily, a district court's refusal to grant a downward departure is unreviewable on appeal."). Our decisions have pointed to 18 U.S.C. § 3742(a) to support that conclusion. In *United States v. Fossett*, we explained that we "indisputably" have jurisdiction to review sentences under 28 U.S.C. § 1291, because a "sentence

---

[1] "Before [*United States v. Booker*, 543 U.S. 220 (2005)], we stated repeatedly that [18 U.S.C. § 3742(a)] left us without jurisdiction to consider a defendant's appeal of a discretionary decision of the district court to not apply a downward departure, so long as the district court did not incorrectly believe that it lacked the authority to apply a departure. Although the Supreme Court in *Booker* excised section 3742(e), it left section 3742(a) intact. We agree with the Eighth and Tenth Circuits that our precedent similarly remains intact, and, therefore, we lack jurisdiction to review the decision of the district court not to apply a downward departure." *Winingear*, 422 F.3d at 1245 (citations omitted).

24-12208                ABUDU, J., Concurring                3

constitutes a final decision in a criminal case." 881 F.2d 976, 979 (11th Cir. 1989); *see also* 28 U.S.C. § 1291. Yet, we concluded that 18 U.S.C. § 3742 limits "the claims that the court of appeals may hear in reviewing an appeal." *Fossett*, 881 F.2d at 979. *Fossett* read § 3742(a)(3) as "prohibit[ing] a defendant from appealing a sentencing judge's refusal to make a downward departure from the guideline sentencing range." *Id*. We have repeated that reasoning and often called § 3742(a) a jurisdictional limitation. *See United States v. Chotas*, 913 F.2d 897, 898–900 (11th Cir. 1990) (applying *Fossett*); *Winingear*, 422 F.3d at 1245.

In light of that construction, it is important to recognize what 18 U.S.C. § 3742(a) says and what it does not say. That subsection provides:

> (a) **Appeal by a defendant**. A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—
>
>> (1) was imposed in violation of law;
>>
>> (2) was imposed as a result of an incorrect application of the sentencing guidelines; or
>>
>> (3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) than the maximum established in the guideline range; or

(4) was imposed for an offense for which there
is no sentencing guideline and is plainly unrea-
sonable.

## III.

In light of the source of our "jurisdictional" rule, there are reasons to doubt that discretionary departure decisions fall outside our "'adjudicatory authority.'" *Boechler*, 596 U.S. at 203 (quoting *Kontrick*, 540 U.S. at 455).

First, Section 3742(a) does not "clearly state[]" that we lack jurisdiction over departure decisions. *Bowe*, 607 U.S. at 27 (quoting *Boechler*, 596 U.S. at 203). Indeed, Section 1291 generally gives us jurisdiction over appeals of sentences. *Fossett*, 881 F.2d at 979. Section § 3742(a), on the other hand, simply lists the types of claims a defendant may raise on appeal. 18 U.S.C. § 3742(a). It "does not speak in jurisdictional terms or refer in any way to the jurisdiction" of this Court. *Henderson*, 562 U.S. at 438 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). In fact, it does not use the word jurisdiction nor address this Court's authority at all, *see* 18 U.S.C. § 3742(a); instead, it is directed at potential appellants; it provides those appellants with claims that they may raise on appeal, *id.* ("*A defendant* may file a notice of appeal . . . *if the sentence . . . .*" (emphasis added)). This strongly suggests § 3742(a) is a nonjurisdictional rule. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023) (explaining that "nonjurisdictional rules govern how courts and litigants operate within those bounds . . . for example . . . 'by requiring that the parties take certain procedural steps at certain specified times'" (quoting *Henderson*, 562 U.S. at 435)).

24-12208                ABUDU, J., Concurring                5

Even if there were doubts about whether § 3742(a) implicates this Court's jurisdiction, those doubts suggest that § 3742(a) does not speak with the clarity necessary for a jurisdictional limitation. *Bowe*, 607 U.S. at 27; *Boechler*, 596 U.S. at 203. This is especially true where, as noted, we "indisputably" have power to review sentences as a general matter under § 1291. *Fossett*, 881 F.2d at 979. Section 1291's background grant of jurisdiction makes it unlikely that Congress foreclosed some claims from review, by implication, in § 3742(a). At bare minimum, the interplay of the two statutes creates sufficient ambiguity to conclude that § 3742(a) does not foreclose jurisdiction. *Bowe*, 607 U.S. at 27; *Boechler*, 596 U.S. at 203; *Wilkins*, 598 U.S. at 157.

Second, Section 3742(a) was enacted at a time when the Guidelines were mandatory. *See Winingear*, 422 F.3d at 1245 (recognizing that our jurisdictional rule predates *Booker*). After *Booker*, we now must undertake a broader review of sentencing decisions than we previously did. *See United States v. Henry*, 1 F.4th 1315, 1318 (11th Cir. 2021) ("The Sentencing Guidelines, though they are the starting point for all federal sentencing decisions, are no longer mandatory in whole, or even in part."); *Gall v. United States*, 552 U.S. 38, 41 (2007) ("[C]ourts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard."). Given this sea change in the appellate review of district court sentences, it is now even more unlikely that Section 3742(a)'s text bars us from reviewing discretionary departure decisions in the way it might have before *Booker*, especially given that—as the

district court in this case recognized—departures and variances are each relevant to the overall reasonableness of the sentence and implicate the § 3553(a) factors, which we clearly must review. *See, e.g.*, *Gall*, 552 U.S. at 50 ("We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, [a district court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.").

Third, our treatment of appeals involving downward departures suggests that we do not really treat § 3742(a) as jurisdictional in practice. We permit, as the majority opinion notes, appellants' claims about "whether the district court in fact believed it lacked authority to depart," and "whether, if the district court held such a belief, it was based on legal error." *United States v. Pressley*, 345 F.3d 1205, 1209 (11th Cir. 2003) (first citing *United States v. Alfaro-Zayas*, 196 F.3d 1338, 1342, 1344 (11th Cir. 1999); and then citing *United States v. Webb*, 139 F.3d 1390, 1395 (11th Cir. 1998)). Of course, Section 3742(a) does not use the term "departure," so these challenges are only implicitly permitted. *See* 18 U.S.C. § 3742(a). Yet, our review over these issues reinforces the conclusion that we have the authority to review departure decisions as a general matter and suggests that should do so if a departure decision renders a sentence unreasonable. *Gall*, 552 U.S. at 50. Moreover, even as we repeatedly have held that we partially lack jurisdiction in appeals like this one, we generally have affirmed—not dismissed—the portion of the appeal raising a downward departure issue. *See Fossett*,

24-12208                 ABUDU, J., Concurring                  7

881 F.2d at 979–80 (affirming); *United States v. Dudley*, 463 F.3d 1221, 1228 (11th Cir. 2006) (affirming). That is inconsistent with how we deal with jurisdictional limitations in other contexts. *See, e.g.*, *United States v. Solomon*, 136 F.4th 1310, 1312 (11th Cir. 2025) ("[W]e affirm in part and dismiss in part for lack of jurisdiction."). *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and *dismissing* the cause." (emphasis added) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869))).

★    ★    ★

Given our prior precedent rule, the panel opinion correctly concludes that we lack jurisdiction over Villanueva-Martinez's challenge to the procedural reasonableness of the district court's decision on the downward departure. Nevertheless, this Court should revisit whether Section 3742(a)'s limitations are properly deemed jurisdictional. *See Wilkins*, 598 U.S. at 157 ("Loosely treating procedural requirements as jurisdictional risks undermining the very reason Congress enacted them.").